UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARMON & CARMON,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS CAMPBELL,<br><br>Defendant. | CIVIL ACTION NO. 05-10198 PBS |

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

The defendant, Dennis Campbell, has filed a Motion to Dismiss the Complaint in this action. The grounds for the motion are that the Complaint is barred by the statute of limitations. The Complaint was filed on February 2, 2005. However, the Plaintiff and Dennis Campbell have been engaged in similar litigation before the United States Patent and Trademark Office (USPTO) since 1996, and the allegations made in this Complaint were made by the Plaintiff in the USPTO as early as 1997. Accordingly, the Plaintiff's Complaint is barred by the Statute of Limitations.

### STATEMENT OF FACTS

For the purposes of this Motion, the Defendant will accept as true the factual allegations set forth in the Complaint. *Pujol v. Shearson/American Express, Inc.*, 829 F.2d 1201, 1202 (1st Cir. 1987) (on Motion to Dismiss, allegations in complaint are to be taken as true).

The Plaintiff, Carmon & Carmon, is a New York law firm (Complaint ¶ 4) whose partners are Haggai and Rakeffet Carmon (Complaint ¶ 6). Plaintiff began to use the Globalaw mark before 1988 (Complaint ¶ 7).

In 1993, defendant, Dennis Campbell ("Mr. Campbell"), made contact with the Plaintiff

(¶ 8). Subsequently, Mr. Campbell registered the Globalaw mark in Austria and filed a United States trademark application in 1994 (Complaint ¶ 9). Plaintiff then timely filed an opposition to Mr. Campbell's United States trademark application (Complaint ¶ 10).

Plaintiff filed a United States trademark application in 1994, which was not fully filed until 1995 (Complaint ¶11).

Mr. Campbell sold or assigned his rights in the Globalaw mark to Globalaw Limited, which is owned by about seventy law firms throughout the world, including nine law firms in the United States (Complaint ¶ 13).

Mr. Campbell, knowing of Plaintiff's prior use of the mark, used the mark and infringed the Plaintiff's mark (Complaint ¶17). As a result, the Plaintiff alleges that Mr. Campbell is liable for the following violations:

- Trademark infringement, false designation of origin, passing off and unfair competition (Complaint ¶¶ 31-33);

- Federal unfair competition (Complaint ¶¶ 27-29); and

- Common Law trademark infringement, unfair competition and misappropriation (Complaint ¶¶ 31-33).

## ARGUMENT

### A. THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF BROUGHT THIS SUIT WELL AFTER THE STATUTE OF LIMITATIONS HAD EXPIRED

#### 1. The Statute Of Limitations For Trademark Infringement Is Three Years

In cases based on the Lanham Act, courts look to the analogous state statute to determine a statute of limitations that fits the cause of action. *See* J. McCarthy, McCarthy on Trademarks §§ 31:23, 31:33 (3rd ed. 1994). In Massachusetts, the statute of limitations for trademark infringement actions is three years, which is derived from M.G.L. c. 260, § 2A. *Bean's Glass*

2

*Serv., Inc. v. Speedy Auto Glass, Inc.*, 2002 U.S. Dist. LEXIS 8975 at 13-16 (D. Mass. 2002) (barring recovery for false representation claims governed by a three-year limitation period); *Kusek v. Family Circle, Inc.*, 894 F. Supp. 522, 530 (D. Mass. 1995) (magistrate's recommendation discussing statute of limitations adopted by Judge Ponsor).

A trademark claim arising from unfair competition is governed by Chapter 93A, which establishes a four-year statute of limitations. *Bean's, supra*, 2002 U.S. Dist. at 13-16 (barring recovery for unfair and deceptive trade practices claims governed by the four-year limitations period); *Kusek v. Family Circle, Inc.*, 917 F. Supp. 84, 86 (D. Mass. 1996) (ch. 93A claim barred by four-year statute of limitations).

The statute of limitations period begins to run when the Plaintiff knows or should know of the infringement. *Bean's, supra*, 2002 U.S. Dist. at 14. (applying the "discovery rule" in finding that Plaintiff was barred by the ch. 93A four-year limitation); *Kusek, supra*, 917 F. Supp. at 86 (plaintiff's knowledge of defendant's infringing magazine began the ch. 93A four-year limitations period).

### 2. The Plaintiff's Complaint Is Time-Barred

In the present case, Plaintiff brought suit in February 2005, long after the statute of limitations had expired. Plaintiff had filed an opposition in 1996 to Mr. Campbell's U.S. trademark application, and knew of Mr. Campbell's alleged infringing actions at that time. See Exhibit A, the docket of the Trademark Trial and Appeal Board (TTAB) in *Carmon & Carmon Law Offices v. Dennis Campbell*, which shows that Plaintiff's opposition was filed on January 16, 1996[1]. Moreover, Haggai Carmon, a partner in the Plaintiff, filed an affidavit in the TTAB proceedings on March 5, 1997. The Affidavit is attached hereto as Exhibit B. Paragraph 17 of

---

[1] The Court may take judicial notice of the TTAB proceedings. *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997).

3

the Affidavit states:

> Between February 1988 and October 1994 Carmon & Carmon and Globalaw actively sought to expand their practice and contacted many foreign lawyers, including lawyers in Austria, for the purpose of potentially associating with them and adding them to Opposers' network of affiliated law offices worldwide. Letters in this regard were sent to Applicant [Dennis Campbell], as well as to Dr. Lothar Hofmann of Rustler, Frotz & Partners, Mariahilfer Strasse 196 Vienna, Austria. Dr. Hofmann now appears as the Applicant's attorney in Applicant's trademark application in Switzerland. (See Exhibit 16.) Applicant notified Opposers by letter dated March 29, 1993 that he expected to visit the U.S. during May and June, 1993 and suggested a meeting. (See Exhibit 17.) No affiliation between Opposers and Applicant or Dr. Hofmann resulted and shortly thereafter Applicant, without Carmon & Carmon's knowledge or consent, filed for registration of Carmon & Carmon's mark GLOBALAW in the U.S. and elsewhere and apparently adopted and began use of Carmon & Carmon's mark in connection with services virtually identical to Carmon & Carmon's legal and association services.

These allegations, made in 1997, are virtually identical to the facts alleged in Paragraphs 7-10 of this Complaint, which was filed eight years later, in 2005.

Plaintiff's eight-year delay in bringing this suit places the Complaint outside both the three-year statute of limitations for trademark infringement claims and the four-year statute of limitations for unfair competition claims. Accordingly, Mr. Campbell's Motion to Dismiss should be granted because the statute of limitations for trademark infringement actions has run.

### 3. The Complaint Also Is Barred By Laches

One court in this district has suggested that the limitations period for trademark infringement is governed by laches. *Micromuse, Inc. v. Micromuse, PLC.*, 304 F. Supp.2d 202, 218 n. 21 (D. Mass. 2004). The Plaintiff's Complaint is similarly barred under a laches analysis. A claim filed after the limitations period has expired is presumptively barred by laches. McCarthy on Trademarks, *supra*, at § 31.23 ("if the claim is filed *after* the analogous limitations period has expired, the presumption is that laches is a bar to some or all remedies sought in the suit."). Since the statute of limitations has run, as shown above, the Complaint is presumptively barred by laches.

Laches also bars the Complaint for reasons of prejudice to the defendant and the plaintiff's unreasonable delay. *Nexxus Prods. Co. v. CVS N.Y., Inc.*, 188 F.R.D. 11, 17 (D. Mass. 1999). Plaintiff knew of Mr. Campbell's use of the mark in 1996, and unreasonably delayed for over eight years in bringing this suit. In the eight years since the statute of limitations accrued, Mr. Campbell has transferred his interest in Globalaw to a group of seventy law firms and no longer possesses an interest in this controversy. Allowing Plaintiff to hale Mr. Campbell from Austria to the United States to defend these stale allegations in which he has no interest causes severe prejudice to Mr. Campbell.

### 4. There Is No "Continuing Wrong"

Plaintiff has argued that the Complaint is not barred by the statute of limitations because "Campbell is still the applicant for registration of the mark in Campbell's name"[2]. However, the fact that Mr. Campbell's name inadvertently was not removed from the trademark application is not relevant. The trademark registration process does not amount to "use" of the mark in commerce. *Kusek, supra*, 894 F.Supp. at 531-32. If there is no "use" in commerce, there is no continuing infringement.

---

[2] Plaintiff's Opposition to Defendant's Motion for Extension of Time to Response to Complaint, p. 2.

## CONCLUSION

For the reasons stated above, the Defendant Dennis Campbell respectfully requests this Court to grant his Motion to Dismiss.

Respectfully submitted,

**DENNIS CAMPBELL**

By his Attorneys

BURNS & LEVINSON LLP

*/s/ Mark Schonfeld*

Mark Schonfeld
BBO No. 446980
Burns & Levinson LLP
125 Summer Street
Boston, Massachusetts 02110
Telephone: 617.345-3000
Facsimile: 617.345.3299

Dated: March 4, 2005

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by hand on 3-4-05
*/s/ Mark Schonfeld*

J:\Docs\27290\00000\00909793.DOC




United States Patent and Trademark Office

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# TTABVUE. Trademark Trial and Appeal Board Inquiry System

## Opposition

**Number:** 91101473  **Filing Date:** 01/16/1996
**Status:** Pending  **Status Date:** 10/17/1996
**Interlocutory Attorney:** KAREN S KUHLKE

**Defendant**
**Name:** DENNIS CAMPBELL
**Correspondence:** CAMI DAWSON BOYD
JACKSON WALKER L.L.P.
901 MAIN STREET SUITE 6000
DALLAS, TX 75202
**Serial #:** 74604789
**Application Status:** Opposition Pending
**Mark:** GLOBALAW

**Plaintiff**
**Name:** CARMON & CARMON LAW OFFICES; GLOBALAW AND GLOBALAW, INC.
**Correspondence:** RAKEFFET CARMON
CARMON & CARMON LAW OFFICES
767 THIRD AVENUE, 24TH FLOOR
NEW YORK, NY 10017

**Prosecution History**

| # | Date | History Text | Due Date |
|---|---|---|---|
| 49 | 09/30/2004 | PROCS REMAIN SUSP RE CIVIL ACTION | |
| 48 | 09/24/2004 | P'S CORRESPONDENCE | |
| 47 | 09/18/2004 | PARTIES ARE ALLOW 30 DAYS TO INFORM THE BOARD OF STATUS OF C.A. | |
| 46 | 07/30/2003 | D'S MOT TO SUSP. GRTD AND PENDING FINAL DISP. OF C.A. | |
| 45 | 06/11/2003 | PLN'S OPP TO D'S MOT TO SUSPEND FURTHER PROC. | |
| 44 | 06/05/2003 | PLN'S FIRST SET OF REQ FOR DOCUMENT | |
| 43 | 05/22/2003 | D'S MOT TO STAY FURTHER PROCEEDINGS | |
| 42 | 04/24/2003 | MOTION TO COMPEL DENIED/DATES RESET | |
| 41 | 03/27/2003 | DEF'S REPLY BRIEF RE MOTION TO COMPEL | |
| 40 | 03/13/2003 | def's memo & opp to def's mot to compel | |
| 39 | 02/12/2003 | D'S MOT TO COMPEL DISC AND REQ TO PROC. PEND. DISC ISSUES | |
| 38 | 02/12/2003 | DELETE ENTRY | |
| 37 | 11/21/2002 | STIPULATED MOT APPROVED | |
| 36 | 08/27/2002 | STIPULATION FOR AN EXTENSION OF TIME | |
| 35 | 05/07/2002 | STIPULATION APPROVED | |
| 34 | 11/20/2001 | STIPULATION FOR AN EXTENSION OF TIME | |
| 33 | 08/21/2001 | DF'S CHANGE OF ATTORNEY | |
| 32 | 09/01/2001 | TRIAL DATES RESET | |

| # | Date | Entry |
|---|---|---|
| 31 | 06/13/2001 | STIPULATION FOR AN EXTENSION OF TIME |
| 30 | 05/03/2001 | PARTIES' RESPONSE DUE:30-DAYS |
| 29 | 03/28/2001 | DEF'S AMDED. ANSWER & MOT. RESU. DISC. |
| 28 | 02/22/2001 | PL'S AMDED. N. OF OP. |
| 27 | 01/26/2001 | ALLOWED 30 DAYS TO SUBMIT AMENDED NOT OP ;PROCEEDINGS REMAIN SUSPENDED |
| 26 | 07/06/2000 | PROC. REMAIN SUSP.PEND. S.J. |
| 25 | 09/10/1999 | DEF'S RESPONSE TO PL'S MOT TO RESUME CONSIDERATION |
| 24 | 09/01/1999 | DEF'S MOT TO EXT TIME |
| 23 | 09/14/1999 | PL'S OPP TO DEF'S MOT TO EXT TIME |
| 22 | 08/26/1999 | PL'S MOT TO RESUME CONSIDERATION OF PL'S S.J. MOT |
| 21 | 07/27/1999 | PROCEEDINGS SUSP PENDING DISPOSITION OF PL'S MOTION FOR SUMMARY JUDGMENT |
| 20 | 06/18/1997 | DF ALLOWED 20 DAYS TO FILE PROPER MOT; PL ALLOWED 20 DAYS TO FILE RES; PROC SUS |
| 19 | 04/23/1997 | D'S MOTION FOR AN EXTENSION OF TIME |
| 18 | 03/27/1997 | PL'S REPLY TO DEF'S OPP TO PL'S MOT FOR S.J. |
| 17 | 03/24/1997 | PL'S OPP TO DEF'S MOT TO COMPEL DISC |
| 16 | 03/20/1997 | AFF OF DENNIS CAMPBELL |
| 15 | 03/20/1997 | DEF'S OPP TO PL'S MOT FOR S.J. |
| 14 | 03/13/1997 | DEF'S OPP TO PL'S MOT TO SUS DISCOVERY |
| 13 | 03/12/1997 | DEF'S ORDER |
| 12 | 03/12/1997 | DEF'S MEMO OF LAW IN SUPPORT OF MOT TO COMPEL DISCOVERY |
| 11 | 03/12/1997 | DEF'S MOT TO COMPEL DISCOVERY |
| 10 | 03/05/1997 | PL'S MOT FOR S.J.; AFF OF HAGGAI CARMON; MEMO IN SUPPORT OF PL'S MOT FOR S.J. |
| 9 | 03/05/1997 | PL'S MOT TO SUS PROC PENDING DISPOSITION OF PL'S MOT FOR S.J. |
| 8 | 02/03/1997 | TRIAL DATES SET |
| 7 | 01/22/1997 | ANSWER |
| 6 | 12/16/1996 | #4 GRANTED; ANSWER DUE 1/27/97 |
| 5 | 11/27/1996 | PL'S OPP TO DEF'S MOT TO EXT TIME |
| 4 | 11/18/1996 | D'S MOTION FOR AN EXTENSION OF TIME |
| 3 | 10/17/1996 | PENDING, INSTITUTED |
| 2 | 10/17/1996 | NOTICE SENT; ANSWER DUE (DUE DATE)    11/26/1996 |
| 1 | 01/16/1996 | FILED AND FEE |

Results as of 03/02/2005 02:00 PM          Search:

| .HOME | INDEX| SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

---

Carmon & Carmon, Law Offices;
GLOBALAW, Exclusively Foreign and
      International Law; and
GLOBALAW, Inc.,

        Opposers,

v.

Dennis Campbell,

        Applicant.

Opposition No. : 101,473

---

## AFFIDAVIT OF HAGGAI CARMON

Haggai Carmon, being duly sworn deposes and says:

1.  I am an adult citizen of the United States and Israel and resident of the State of New York and competent to make this affidavit. I am a partner in Carmon & Carmon, Law Offices, a partnership existing under the laws of the State of New York; and Globalaw, a New York based international law firm with an exclusive practice in foreign and international law; and Globalaw, Inc. a corporation organized and existing under the laws of the State of New York, which opposed an application by Dennis Campbell to register the mark GLOBALAW <u>inter alia</u> on the basis of prior and exclusive use in the United States.

2.  I believe that the mark which Applicant seeks to register, namely, GLOBALAW consists of or comprises a mark which has not only been previously used by Opposers in the United States and internationally, and not abandoned, such that when that mark is used on or in connection with the services of the Applicant such

use is likely to cause confusion or to cause mistake or to deceive my clients, associated law firms and others.

3. The following facts are fully supported also by the Exhibits attached thereto. The facts set forth herein are primarily facts concerning the adoption and use of the mark GLOBALAW by Opposers in the United States and in foreign countries which are known to me personally.

4. In early 1986, I identified the business community's and the public's need for professional legal assistance with the laws of foreign countries. Through considerable expense and effort Carmon & Carmon researched the various legal, ethical and business requirements necessary to provide such services in the United States and internationally. Samples of my efforts and those of my colleagues in that regard are attached hereto as Exhibit 1.

5. After approximately 18 months of work on this matter, I made contact with UNILAW, a Philadelphia-based legal network of American law firms. As a example of these efforts, in a letter to Ms. Yona Rogosin, director of Marketing and Client Services of Mesirov, Gelman, Jaffe, Cramer & Jamieson, a cooperation between GLOBALAW and UNILAW was suggested. (See Exhibit 2.)

6. Opposer, Carmon & Carmon, a law firm in New York City, is the exclusive owner of the service mark GLOBALAW for use with the providing of legal services on an international basis and association services promoting the interests of a group of law firms related thereto. Carmon & Carmon in 1988 formed Globalaw P.C. This entity filed a request with the U.S. Small Business

Administration to be included in their roster of small businesses. As evident from the renewal form dated 2/24/89, Globalaw then described its capabilities as "legal services in particular foreign and international laws, worldwide network of correspondent law firms, in most of the foreign jurisdictions. Instant foreign and international law work in the USA." The renewal form also notes that Globalaw was established in 1988. (See Exhibit 3.) Globalaw P.C. was succeeded by another Opposer in this proceeding, Globalaw, Inc., a service company for GLOBALAW, a law firm exclusively dedicated to the practice of foreign and international law. On January 22, 1988 Carmon & Carmon formed Globalaw, a law firm which limits its practice to foreign and international law. Carmon & Carmon owns 100% of Globalaw and Globalaw, Inc. and Carmon & Carmon, Globalaw and Globalaw, Inc. all use the trade name and service mark GLOBALAW in commerce. Globalaw and Globalaw, Inc. use the mark as sole licensees of Carmon & Carmon.

7. Other than Applicant, I know of no other users in the U.S. of GLOBALAW or confusingly similar terms in the legal field.

8. Carmon & Carmon has used and promoted the GLOBALAW mark extensively within the United States and internationally. A brochure aimed at private sector lawyers was prepared and mass mailed to thousands of lawyers in small firms throughout the country. (See Exhibit 4.)

9. A brochure aimed at U.S. government lawyers was sent to all listed U.S. government lawyers in America. (See Exhibit 5.) Exhibits 4 and 5 are only samples of the extent of the considerable

- 3 -

effort and expense Carmon & Carmon made to promote the GLOBALAW mark in the U.S. and in foreign countries.

10. Exhibits 6 through 14 are true and accurate copies from yearly samples from 1988 to 1996 of Opposers' use of the GLOBALAW mark in the rendering and promoting of their services as well as some samples of Opposers' clients, colleagues and service providers acknowledging and recognizing Opposers' mark GLOBALAW in correspondence with Opposers. Over time, Opposers have discarded GLOBALAW files and correspondence that pertain to matters long since resolved. Certain of the copies submitted herewith are approximately 10 years old and thus are merely representative and by no means exhaustive with respect to the activities of a given year. As the text of the documents indicate there was and is an ongoing GLOBALAW service in the international legal field from 1988 through to the present.

11. Opposers, under the service mark GLOBALAW, provide legal services from New York to individuals and corporations located outside the U.S. regarding international law issues. Also, Opposers render legal services under the mark GLOBALAW to individuals and corporations in the U.S. regarding foreign and international law issues.

12. Opposers have an established network under GLOBALAW of associated law firms worldwide which assist Opposers in various foreign and international legal matters. The associated GLOBALAW network members number more than 130 law firms worldwide and these members are available to render legal assistance in their

respective countries to all other members. This network of associated law firms operates under the mark GLOBALAW.

13. Opposers also render opinions concerning international and foreign law to the United States Government and appear on behalf of the U.S. in foreign courts in suits to which the U.S. is a party. Carmon & Carmon, since December 1985, and Globalaw, since 1988, have been outside counsel to the U.S. Department of Justice in various matters. In addition to work for the Department of Justice, Carmon & Carmon and Globalaw have been retained to render legal services for three U.S. Attorney's offices, the U.S. Department of State, the Securities and Exchange Commission (SEC), the Internal Revenue Service (IRS), the Agency for International Development (AID), the Office of Thrift Supervision (OTS), the Postal Inspection Office, and the Federal Deposit Insurance Corporation (FDIC). Substantially all of this work has involved international and foreign law issues; a growing segment is international receivership-type work. U.S. Government agencies have assigned Carmon & Carmon and Globalaw the world-wide responsibility (except for the U.S.) of complex multinational and multi-million dollar cases which require work in more than 20 countries. Carmon & Carmon's and Globalaw's attorneys frequently travel internationally on official U.S. Government business. See Exhibit 15, a letter in this regard from the Director of the Office of Foreign Litigation of the U.S. Department of Justice. Services to this same Director, Mr. Epstein, under the mark GLOBALAW date back to at least January 28, 1988 (see Exhibit 6).

14. Carmon & Carmon and Globalaw have been using the mark GLOBALAW in commerce in the U.S. and in commerce between the U.S. and foreign countries on or in connection with the services identified above continuously since approximately February 2, 1988, a date well prior to any of the following dates associated with Applicant: 1) the filing date of the application herein opposed, namely November 30, 1994, 2) the Section 44(d) priority date claimed by Applicant, namely August 16, 1994, or 3) the first use date claimed by Applicant, namely January 4, 1994. Such use by Opposers has not been abandoned.

15. Through its use of the mark GLOBALAW in commerce, Carmon & Carmon owns rights in the mark and has considerable good will in the mark and trade name. Said mark and trade name of Carmon & Carmon are symbolic of extensive good will and client and professional recognition built up by Carmon & Carmon through the expenditure of substantial amounts of time, money, and effort in promotion and the rendering of high quality legal services. Various letters in the Exhibits 6 through 15 from Opposers' clients and colleagues demonstrate the recognition of GLOBALAW as a service mark and company name of Opposers.

16. The mark of Applicant, GLOBALAW, is identical to Opposers' mark GLOBALAW and in use with services overlapping with and closely related to Opposers' demonstrated services, as to be likely, when applied to Applicant's services, to cause confusion, or to cause mistake, or to deceive.

17. Between February 1988 and October 1994 Carmon & Carmon and

Globalaw actively sought to expand their practice and contacted many foreign lawyers, including lawyers in Austria, for the purpose of potentially associating with them and adding them to Opposers' network of affiliated law offices worldwide. Letters in this regard were sent to Applicant, as well as to Dr. Lothar Hofmann of Rustler, Frotz & Partners, Mariahilfer Strasse 196 Vienna, Austria. Dr. Hofmann now appears as the Applicant's attorney in Applicant's trademark application in Switzerland. (See Exhibit 16.) Applicant notified Opposers by letter dated March 29, 1993 that he expected to visit the U.S. during May and June, 1993 and suggested a meeting. (See Exhibit 17.) No affiliation between Opposers and Applicant or Dr. Hofmann resulted and shortly thereafter Applicant, without Carmon & Carmon's knowledge or consent, filed for registration of Carmon & Carmon's mark GLOBALAW in the U.S. and elsewhere and apparently adopted and began use of Carmon & Carmon's mark in connection with services virtually identical to Carmon & Carmon's legal and association services.

18. By Internet, Applicant describes his network as "committed to serving the legal needs of business, institutions, and individuals involved in international transactions." (See Exhibit 18.)

19. Exhibit 19 shows instances abroad that have been brought to my attention where my GLOBALAW services and activities and Applicant have run into conflict due to the mutual use of GLOBALAW. The February 5, 1995 letter was my first notice of Applicant's use. Problems have surfaced regarding my network members registering GLOBALAW in their respective countries due to Applicant's

- 7 -

registrations therein. Also, members of Applicant's network have contacted members of Opposers' network on Applicant's behalf requesting information about Opposers' GLOBALAW network.

20. The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the outcome of this proceeding, the validity of the application of Carmon & Carmon for GLOBALAW (Ser. No. 74/629,447) or any registration resulting therefrom, declares that: the facts set forth in this affidavit are true; and all statements made herein of his own knowledge are true and all statements made on information and belief are believed to be true.

Further Affiant sayeth not.

_____
Haggai Carmon

State of New York       )
                        )
                        )  ss.:
                        )
County of New York      )

Be it remembered, that on this 4th day of March, 1997, before me, the subscriber, _____, a Notary Public, personally appeared Haggai Carmon, who, I am satisfied, is the person named in and who executed the within Instrument, and thereupon he acknowledged that he signed, sealed and delivered the same as his free act and deed, for the uses and purposes therein expressed.

My Commission expires: _____

Notary Public
Certificate Filed in New York County
Commission expires Nov 23 1998

- 8 -